FOURNET, Justice.
 

 Mrs. Angele Le Blanc, having been injured when the car in which she was riding with her husband collided with a Buick driven by Godfrey D. Wardrope, instituted this suit against the driver, his employer, Albert G. Thomas, and Thomas’s insurer, the New Amsterdam Casualty Company, as well as against the American Mutual Liability Insurance Company, the insurance carrier of H. T. Cottam & Co., Inc., her husband’s employer, to recover damages for the injuries sustained. During the trial of the case, Waldrope, Thomas, and the New Amsterdam Casualty Company compromised the case, leaving as the defendant the American Mutual Liability Insurance Company, against whom a judgment of $5,000 was rendered, with legal interest from judicial demand. This judgment was affirmed by the Court of Appeal for the Parish of Orleans. 8 So.2d 83.
 

 The case is now before us for a review of the appellate court’s judgment on a writ of certiorari granted upon the application of the defendant insurance company.
 

 Counsel for defendant concede that the “accident was caused partly, if not entirely, by the negligence of Philip Le Blanc, plaintiff’s husband, and that at the time of the accident he was using his own automobile on the business of H. T. Cottam & Company,” his employer. It is also conceded that if Mrs. Le Blanc is entitled to recover,
 
 *862
 
 the $5,000 awarded her is not excessive. But counsel, by way of exceptions of no catxse and no right of action, raised in both of the lower courts the issue that the plaintiff “cannot maintain a right of action for damages for physical injuries against the insurer of her husband’s employer, since said insurer, if held liable, could recover the damages from said husband as the subrogee of the husband’s employer, and plaintiff would thus circumvent the prohibition contained in Article 105 of the Louisiana Code of Practice against married women prosecuting suits against their husbands during coveture.”
 

 On the merits they contend plaintiff’s husband was not an additional insurer under the provisions of the policy sued on, as held by the. Court of Appeals, since the policy covered “only the responsibility, if any, of Cottam & Company for the negligence of its employees when using their automobiles in the course of their employer’s business when the doctrine of respondeat superior applies,” arguing that for the doctrine of respondeat superior to apply in this case it was not only necessary for the plaintiff to show Le Blanc was acting within the scope of his employment and on the business of his employer at the time the accident occurred (all of which is conceded), but that it is also necessary for the court to find “Cottam had the right or power under the contract of employment, not only to direct Le Blanc in connection with his duties as a salesman for the company, but also the right or power to direct him in connection with his physical movements and the operation of his own automobile which he used in connection with his solicitation of business for the company.”
 

 In the alternative, counsel insist that if recovery is permitted, interest should not run from judicial demand, but only from the date the judgment was rendered, as specifically provided in the policy.
 

 The suggestion that the insurance company, subrogated to the rights of plaintiff’s husband’s employer, could sue plaintiff’s husband to recover such damages as it might be held to be liable for in this case, circumvents Article 105 of the Code of Practice which prohibits married women from suing their husbands, is without merit, for under the express provisions of Act No. 55 of 1930, the plaintiff had a right of direct action against the defendant insurance company to recover damages for the injuries sustained, which damages are, under Article 2334 of the Revised Civil Code and the jurisprudence thereunder, her separate property. Furthermore, the plea of inter-spousal immunity, available to the husband in defeating any recovery sought by his wife for injuries sustained by her through his negligent operation of an automobile, is personal to him and, therefore, not available to the insurer of the husband’s employer. See Edwards v. Royal Indemnity Co., 182 La. 171, 161 So. 191, and Ruiz v. Clancy, 182 La. 935, 162 So. 734.
 

 The defense of the merits is> equally unimpressive, since it is based on the erroneous assumption that the H. T. Cottam Company had no power to exercise any supervision or control over Le Blanc in connection with the operation of his automobile under its contract of employment with
 
 *864
 
 him, even when the automobile was driven by him in the course and scope of his employment, for a mere reading of the contract will show that the Cottam Company had the right to control Le Blanc’s every activity in connection with his employment. He was required to devote his entire time to his employer’s business, subject to the direction and the rules and regulations of his employer. .
 

 Moreover, it is our opinion that Le Blanc, plaintiff’s husband, was an additional insured within the meaning and contemplation of the policy, as held by the Court of Appeals.
 

 As was pointed out by the appellate court, “The policy issued to H. T. Cottam & Company, plaintiff’s employer, without the rider, is what is known as a ‘National Standard Automobile Liability Policy.’ It insured Cottam & Company against responsibility in damages resulting from the negligence of any person using its automobiles with its consent, whether for business or pleasure, and also covered the persons operating the automobiles. It divided the insured into two classes, the ‘named insured,’ Cottam & Company, and the unqualified insured, meaning the operators of the automobiles as appears by the following provision of the policy:
 

 “ ‘1. Coverage A — Bodily Injury Liability.
 

 “ ‘To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile.
 

 * ‡ Jfc # ' Sji Sjs *
 

 “ ‘Definition of “Insured”
 

 “
 
 ‘The unqualified word “insured” where-ever used in coverages A and B and in other parts of this policy, when applicable to these coverages, includes not only the named insured but also any person while using the automobile and any person or organization legally responsible for the use thereof, provided that the declared and actual use of the automobile is “pleasure and business” or “commercial”, each as defined herein, and provided further that the actual use is with the permission of the named insured. * * *’.
 

 “The ‘Employers’ Non-Ownership Liability’ rider, which was apparently attached to the policy at the time of its issuance, reads as follows:
 

 “ ‘It is agreed that such insurance as is afforded the named insured by the policy for Bodily Injury Liability and for Property Damage Liability applies with respect to automobiles not owned by the named insured, s' ibj ect to the following provisions :
 

 “ T. Application of Insurance. The insurance applies only to the use, by any person named in the schedule forming a part hereof, of any automobile * * * in the business of the named insured as expressed in the declarations, and to the use in such business, by any employee of the named insured, * * *.
 

 
 *866
 
 “ ‘2. Exclusions. The policy does not apply:
 

 “‘(1) To any automobile owned in full or in part by, or registered in the name of, or hired by the named insured or a partner thereof if the Named insured is a partnership ; * *
 

 “Attached to the rider is a schedule containing the names of seventeen employees, among which there appears ‘P. J. Blanc’, admittedly intended as P. J. Le Blanc, plaintiff’s husband, and opposite each name in the schedule is a premium charge of from $2.00 to $4.00 for property damage and from $8.00 to $12.00 for public liability. In Le Blanc’s case the charge was $2.00 and $8.00 respectively. These amounts he was required to pay to his employer.
 

 “Defendant’s counsel contend that the effect of this rider is to restrict the coverage of the policy to the named insured, Cottam & Company, only, but in our opinion the only effect is to change the coverage of the policy from the automobiles of Cottam & Company to those owned by its employees mentioned in the schedule attached to the policy and to restrict the coverage to the business use of the automobiles. In other words, the so-called omnibus clause appearing in the original policy is modified to that extent and the policy, as affected by the rider, does not cover any person using the various automobiles, but only those mentioned in the schedule. It does not extend to persons using the automobiles with the permission of the insured, the named insured or the unqualified insured, but it does cover each of the seventeen employees.
 

 “it is insisted that the rider controls wherever there is a conflict between its. terms and those of the policy and this, we freely concede. It is also strenuously urged' that the present policy, as affected by the rider, is much cheaper than the original standard liability policy and the argument is made that the coverage must necessarily be correspondingly restricted. This, is unquestionably a logical deduction which is clearly established by a comparison of the policy without the rider and with it. Under the omnibus clause in the original policy the coverage extends to the automobiles of Cottam & Company and to all persons, using those automobiles with the consent of Cottam & Company, whether in the interest of its business or for the individual pleasure of the operator, a very wide coverage involving not only the responsibility which might attach to Cottam & Company by reason of the negligence of its employees, but that of an unlimited number of other persons, who might be using its cars for their own account or for that of Cot-tam & Company, subject only to the condition that it is done with Cottam & Company’s permission. When we contrast this coverage with that which obtains under the policy as affected by the rider, the difference in the extent of the insurer’s liability is. very marked. For example, Cottam & Company, the "named insured, is still protected against liability for the negligence of its employees,
 
 but
 
 only such employees as are named in the schedule attached to the rider,
 
 seventeen in
 
 all. It is not protected against the negligent operation of its own automobiles (presumably it suits the purpose of Cottam & Company not to.
 
 *868
 
 own any automobiles) but is only insured against the results of the negligent operation of the automobiles of those seventeen employees, when used in connection with its business, and the seventeen employees are protected only when their cars are being used for Cottam & Company’s business interests and not for pleasure with or without Cottam & Company’s permission.
 

 “The contention of defendant’s counsel .that only Cottam & Company is protected under the policy as modified by the rider would, if sound, further restrict the liability of the insurer under the policy, but this conclusion is not justified, for, under the express terms of the rider, the coverage is made applicable ‘to the use by any person > named in the schedule forming part hereof of any automobile * * * in the business of the named insured as expressed in the declarations.’ Moreover, each of the seventeen salesmen mentioned in the schedule is assessed'a definite amount of the total premiums which they were required to pay to their employer and which, to our mind, indubitably establishes the fact that it was the intention of the insurer to protect the individual employees, subject, of course, to the limitation of coverage in the rider, that is to say, when operating their cars in the businéss of their employer.”
 

 The alternative plea and the argument thereunder was considered by the appellate court, the court, in our opinion, properly disposing thereof as follows :
 

 “The remaining question is that of interest. It is contended that interest should run only from the date of judgment because of a provision in the policy to that effect and in spite of Act 206 of 1916, which provides that ‘legal interest shall, hereafter, attach from date of judicial demand, on all judgments, sounding in damages, “ex delicto”, which may be rendered by any of the courts of this State.’
 

 “The argument is that, since the policy has stipulated that the interest should run from the date of judgment, that is all that plaintiff can recover as against the insurance company, regardless of what may be the effect of the statute against individuals where no contract is involved.
 

 “It is true that Act 55 of 1930 restricts the rights of a plaintiff to the terms and limits of the policy. But it also provides that such terms and limits shall not be in contravention of law. Where a policy of insurance provides for interest at a lesser rate, or for a shorter term, than the law fixes, it is in contravention of law. Therefore, since Act 206 of 1916 provides that interest shall run from date of judicial demand, that statute should prevail. The language of the statute is mandatory and declares that all judgments shall bear interest from date of judicial demand, and this is true though the litigant does not demand it, or the judgment so provides. Layne v. Louisiana Power & Light Company et al. [La.App.], 164 So. 672.”
 

 For the reasons assigned, the judgment is affirmed. All costs to be borne by the defendant.
 

 ODOM, J., takes no part