364 So.2d 1041 (1978)
The TRAVELERS INDEMNITY COMPANY
v.
RESERVE INSURANCE COMPANY.
No. 12219.
Court of Appeal of Louisiana, First Circuit.
October 9, 1978.
*1042 Francis X. Neuner, Jr., Lafayette, of counsel, for plaintiff-appellee Travelers Indem. Co.
William A. Porteous, III, New Orleans, of counsel, for defendant-appellant Reserve Ins. Co.
Before ELLIS, BLANCHE and LOTTINGER, JJ.
LOTTINGER, Judge.
This is an appeal by Reserve Insurance Company (Reserve) from a declaratory judgment decreeing it liable under an excess insurance policy for certain interest on a judgment. Reserve also appeals the judgment making the declaratory judgment executory.
The trial judge in his written reasons for judgment made the following finding of facts:
"In August of 1972 judgment in the amount of $134,000.00, plus seven percent interest thereon from date of judicial demand, was rendered against Baker Oil Tools, Inc. by the United States District Court for the Western District of Louisiana. The action was brought by one James Allen Mouton against Baker and The Travelers Insurance Company. Baker was insured by Travelers up to $50,000.00 and by Reserve Insurance Company under an excess liability policy limited to the difference between $1,000,000.00 and Travelers' underlying limits. Pursuant to the judgment Travelers paid its $50,000.00 policy limits plus the interest which accrued on that amount from date of judicial demand. Additionally, Travelers paid the interest which accrued on the excess judgment of $84,000.00 from date of its signing pursuant to its interpretation of the terms of its policy agreement with Baker. Reserve paid the excess principal of $84,000.00 but refused to pay any interest whatsoever claiming that its policy excluded liability for interest due.
"To prevent a seizure of the property of Baker to satisfy the remainder of the interest due, Travelers later paid an additional $11,152.60 representing the interest from date of judicial demand until judgment on the $84,000.00 portion of the judgment. Travelers and Reserve now seek a declaratory judgment decreeing which of the two is actually liable for this disputed amount of interest on the 1972 judgment."
In filing peremptory exceptions of no right and no cause of action, and nonjoinder of an indispensable party, Reserve argues that the Travelers Insurance Company (Travelers) had no right or cause of action since Reserve did not have a contract with Travelers nor is any debt due Travelers, and if any debt is owed it is due Baker Oil Tools, the insured, and indispensable party who must be joined before the case can be adjudicated.
The record reveals that Travelers, without waiving any rights, paid the disputed interest on the excess portion of the judgment against the insured. This court finds that Travelers has a cause of action for the amount it paid, LSA-C.C. 2134 and Standard Motor Car Co. v. State Farm Mutual Automobile Insurance Company, 97 So.2d 435 (La.App. 1st Cir. 1957), and has a right of action under LSA-C.C.P. art. 1872 to request the determination of the rights of the subrogee-insured under the excess policy issued by Reserve.
Additionally, we concur with the trial court's conclusion that Baker was not an indispensable party. An indispensable party is one whose rights are directly affected by the judicial determinations made in the suit. LSA-C.C.P. art. 641, State, Department of Highways v. Lamar Advertising Company of Louisiana, Inc., 279 So.2d 671 (La.1973). In Lamar, supra, Justice Tate extensively examines the procedural and substantive effects of labeling a party indispensable. He reasons that "parties should be deemed indispensable only when that result is absolutely necessary to protect substantial rights."
It is clear, as Justice Tate points out, that emphasis in the determination of the classification is whether the absent party has any substantive rights which would be affected *1043 by the adjudication. Under the fact situation presented in our case, no substantive rights of Baker would be affected by either a favorable or unfavorable ruling against Reserve.
Reserve next appeals from the finding by the trial judge that it was liable under the excess policy for the interest. We find no error in the ruling of the trial court and adopt as our own its reasons for judgment, to wit:
"Travelers' policy provides as follows with regard to interest liability:
'The company will pay, in addition to the applicable limit of liability:
(a) all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company, and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;'
This policy provision, Travelers argues, limits its interest liability to the original amount it paid, that is:
interest on policy limits
from the date of judicial demand until paid, and
interest on the excess judgment
from date of entry or signing until policy limits are paid.
In support of its argument that this view of the clause is in accord with Louisiana's law, Travelers cites a line of jurisprudence, beginning with Doty v. Central Mutual Ins. Co., 186 So.2d 328 (3rd Cir. 1966), writ ref. [249 La. 486], 187 So.2d 451 (1966), in which such limitations on an insurer's interest liability were upheld. All the cases cited involved judgments in excess of the insurer's policy limits but none dealt with the question of liability for the remaining interest due, i. e., the interest due on the excess amount from date of judicial demand until date of judgment.
"Responding to Travelers' argument that its liability is so limited, Reserve cites two Supreme Court cases to the effect that an insurer's attempt to limit its interest liability contravenes law and public policy and so cannot be upheld. In LeBlanc v. New Amsterdam Casualty Co. [202 La. 857], 13 So.2d 245 (1943), the court considered a clause limiting the insurer's liability to interest accruing from date of judgment only. Interest was awarded in that case from date of judicial demand; the court used the following reasoning:
'. . . Where a policy of insurance provides for interest at a lesser rate, or for a shorter term, than the law fixes, it is in contravention of law. Therefore, since Act 206 of 1916 provides that interest shall run from date of judicial demand, that statute should prevail. The language of the statute is mandatory and declares that all judgments shall bear interest from date of judicial demand, and this is true though the litigant does not demand it, or the judgment so provides.'
The same reasoning was utilized in the subsequent case, Soprano v. State Farm Mutual Automobile Ins. Co. [246 La. 524], 165 So.2d 308 (1964). In neither case, however, did the judgment exceed the policy limits involved.
"Dicta in a still later Third Circuit case, Terro v. State Farm Mutual Automobile Ins. Co., 169 So.2d 417 (La.App. 3rd Cir. 1964), where the judgment did exceed the applicable policy limits, lends some support to Reserve's contention that Travelers cannot limit its liability for interest. The issue in that case was whether an insurer which paid its policy limits unconditionally before judgment could be required to pay any interest on the excess award under an interest clause similar to Travelers' provision. In holding the insurer free of any liability for interest on the excess amount the Court, Tate, Savoy and Culpepper, JJ., with Tate as author, discussed the previously cited cases:
'The plaintiffs also rely upon Louisiana jurisprudence which holds that a liability insurer is liable for interest from date of demand on amounts awarded up to policy *1044 limits, even though provisions of the policy attempt to limit the insurer's liability to interest from date of judgment. Soprano v. State Farm Mut. Auto. Ins. Co., 246 La. 524, 165 So.2d 308; LeBlanc v. New Amsterdam Cas. Co., 202 La. 857, 13 So.2d 245. The basis of these decisions is that such policy provisions must yield to the Louisiana enactment providing that legal interest in tort actions shall attach from date of demand, LSA-R.S. 13:4203. Such jurisprudence might possibly support an argument that the insurer is liable for interest upon the entire amount of the ultimate judgment, from date of demand up until the time of its unconditional tender or payment of policy limits; but it has no application here, where, prior to judicial demand, the insured unconditionally tendered into court its full policy limits.' (Emphasis added.)
This dicta is apparently the only indication in our jurisprudence that a primary insurer would be held for all the interest due on an entire judgment which exceeded its policy limits.
"The cases previously alluded to which were cited by Travelers are clearly contrary to the dicta in Terro. The Doty case, the first in the line of jurisprudence on the issue, itself cites the Soprano and LeBlanc decisions but distinguishes them as addressing different policy considerations because they concern different fact situations. Coming some eighteen months after Terro, the Third Circuit, again with Tate, Savoy and Culpepper comprising the original panel, but sitting en banc on the application for rehearing, issued a per curiam in Doty stating:
'The decisions so holding [Soprano and LeBlanc ] concern only whether the insurer or its insured shall pay the legal interest upon an award up to the policy limits. In the decisions on the issue, to allow interest upon the principal awarded would make the company liable for more than its stated policy limits; the question was whether the insured or the insurer should pay legal interest from judicial demand, as required by Louisiana law, upon the principal of a judgment which awarded an injured person the policy limits.
'Despite the broad language quoted, we can interpret the decisions under their facts as merely a holding by our Supreme Court that, reading the policy in conjunction with Louisiana law, the agreement by the insurer to pay its policy limits plus interest would in such instances be nugatory if construed so as to require the policyholder to pay the interest required by Louisiana law; for thus his insurer would pay its policy limits less legal interest from judicial demand. This reasoning is not as relevant as to any portion of a judgment in excess of policy limits.
'By its supplementary payments clause agreeing to pay interest upon the entire amount of a judgment in excess of policy limits, the insurer intended to provide supplementary protection to its insured over the principal amount plus legal interest thereupon covered by its policy. As the decisions and treated sources above-cited show, however, the intended purpose was merely to pay for interest for which the insured person would otherwise be liable, where (following the judgment) that person's liability for subsequent interest is occasioned by the insurer's unilateral determination to appeal subsequent to the judgment, within the company's sole control under pertinent policy provisions.

`The company's agreement to pay this supplementary interest cannot, within the clear policy intent, be extended to cover legal interest upon the excess awarded from the date of judicial demand as well as from the rendition of the judgment. This agreement, providing for supplementary interest upon the excess for the purpose of avoiding prejudice to the insured person through appellate delay, is not, in our opinion, in contravention of the Louisiana statute providing for legal interest from date of judicial demand upon tort judgments.
'When the award is for policy limits or less, a policy provision limiting the company's liability for that following judgment *1045 has, under Louisiana law, the effect of reducing the protection to the insured from the principal amount of coverage to the principal amount less interest. This explains our courts' holding such a provision in contravention of Louisiana law insofar as sought to be used to limit the insurer's liability to an amount less than the principal amount insured. The same reasoning does not justify our holding ineffective as insurer's supplementary agreement to pay, in addition to the principal amount insured plus legal interest thereupon, legal interest upon any excess of policy limits awarded from the date of judgment only rather than from judicial demand.' (Emphasis added.)
"Subsequent cases also holding that an insurer in Travelers' position is not liable for interest on the excess judgment from date of demand until date of judgment include Pittman v. Fowler, 191 So.2d 172 (La.App. 3rd Cir. 1966); McCrossen v. Bieszczard, 234 So.2d 763 (La.App. 4th Cir. 1969); Orgeron v. Earl Gibbon Transport, Inc., 235 So.2d 134 (La.App. 4th Cir. 1970); Inabinet v. State Farm Automobile Insurance Co., 262 So.2d 920 (La.App. 1st Cir. 1972). Although none of these cases involved an excess liability carrier as Reserve is here, all the courts upheld the limited interest liability which Travelers seeks as primary insurer. Liability for interest on the excess between demand and judgment apparently fell to the insured in those cases just as the liability for the excess over the policy limits became the insured's burden.
"Although Travelers has shown that its interest liability should properly be limited to the amount of its original payment, the question remains whether Reserve should bear the remaining interest liability. Reserve asserts that its policy clearly excludes any interest liability whatsoever. Reserve's policy provides as' follows in its `Insuring Agreement':
`In consideration of the payment of premium stated in the Declarations, the Company agrees to indemnify the Insured, in accordance with the applicable insuring agreements of the Primary Insurance against loss subject to the limits stated in Item 5, Section I of the Declarations and as fully and to all intents and purposes as though the Primary Insurance had been issued for the limits set forth in Item 5, Section III of the Declarations. This policy shall apply only to coverages for which an amount is indicated in Item 5, Section I, and then only in excess of the corresponding amount as indicated in Item 5, Section II of the Declarations.' (Emphasis added.)
The definitions section further explains the policy terms:
'1. Loss. The word "loss" shall be understood to mean the sums paid in settlements of losses for which the Insured is liable after making deductions for all other recoveries, salvages and other insurances (other than recoveries under the policy/ies of the Primary Insurer), whether recoverable or not, and shall exclude all expense and costs.
2. Costs. The word "costs" shall be understood to mean interest on judgments, investigations, adjustment and legal expenses (excluding, however, all expense for salaried employees and retained counsel of and all office expense of the Insured).
3. Primary Insurance. The term "primary insurance" shall be understood to mean the policy (policies described in Item 3.)' (Emphasis added.)
Simply stated, Reserve argues that its policy covers only loss, that loss does not include costs and that interest on a judgment is one of those excluded costs.
"Travelers concedes that merely reading the definition section of the policy does lead to the conclusion that Reserve has no interest liability but argues that the policy must be read as a whole before any interpretation can be attempted. The basis of Travelers' claim that Reserve does owe interest despite its definitions clause rests on an interpretation of the coverage page which was written for this particular policy. That endorsement to the policy states that the Reserve limit of liability shall be `the difference between $1,000,000.00 . . . and *1046 underlying limits . . . as set forth in policy . . . issued by The Travelers Insurance Company.' This clause, argues Travelers, indicates an intent to pay whatever was due above the underlying limits of the Travelers policy. In support of its view that this clause alters the basic policy provision, Travelers quotes the final section of the endorsement: `Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions or limitations of the policy to which this endorsement is attached other than as above stated.' Essentially, Travelers claims that the limit of liability clause can alter the other policy terms and that it did in fact alter the terms relative to interest liability by assuming the full excess over Travelers underlying limits. The conditions clause of the policy stating that, unless otherwise specified, the policy `shall follow the primary insurance in all respects' is quoted as a further indication of Reserve's intention to assume all liability remaining after Travelers made full payment under its policy terms.
"The several factors attendant to an interpretative analysis of the Reserve excess coverage policy leads this court to the conclusion that Reserve is liable for the $11,152.60 paid by Travelers and which represents interest on the $84,000.00 excess portion of the judgment from the date of judicial demand until entry of the judgment. These factors are the intent inherent in the nature and purpose of excess coverage; the construction as a whole of the various terms and conditions of the excess coverage policy; the contractual compatibility of the excess coverage policy with the primary coverage policy; and, the ambiguity with respect to the meaning of `interest on judgments' found in the definitional treatment of `costs' for which liability is excluded by the excess policy.
"This controversy between the two insuring companies places the insured in the untenable position of having purchased coverage for protection up to the sum of $1,000,000.00 and then being exposed to an arguable hiatus in coverage (a segment of decreed interest) which could result in loss to the insured well below the stated policy limits. It is true that the judgment creditor has been paid and while one can only surmise that there will be no attempt to recover the sum from the insured, our law does permit the recovery of money paid in error. The thrust of this litigation does not suggest that Travelers and Reserve believe that there is no coverage whatever for the disputed interest payment. Each seeks to have the liability declared to be that of the other. As between the two companies, it is logical that all parties intended that total protection be afforded by the excess policy up to the sum of $1,000,000.00. As the excess carrier, it was incumbent upon Reserve to fully understand the limitations of coverage in the primary policy. There were adequate jurisprudential guidelines in our law to apprise Reserve of the limitation on Travelers' liability for interest on the excess award accruing between demand and judgment. We are satisfied that it was Reserve's intent and the understanding of both Travelers and Baker that Reserve's coverage would supplement that of Travelers to afford complete protection against loss up to the limits of $1,000,000.00. If otherwise, the nature and purpose of excess coverage would be nullified.
"We find the position of Travelers as regard the result from a reading of the excess policy as a whole to be well founded. Without again quoting the various provisions of the policy, when construed together, we agree that Reserve's policy contractually obligates Reserve to pay whatever was due above the underlying limits of Travelers' policy subject, of course, to the stated limits of $1,000,000.00. The various terms and conditions of the policy are necessarily read within the context of the excess protection sought to be afforded the insured.
"Additionally, because of the fact that both the excess policy and the primary policy contractually offer the insured a composite protection, it is necessary to construe the terms of the excess policy in light of the provisions of the primary policy. This compatibility of interpretation, aside from the joint purpose of the two policies, is mandated *1047 by the explicit references in the excess policy to the primary insurance. Not the least of these references are in the naming of the primary carrier, the number of the policy it issued, and the stipulation that the excess policy is generally subject to all conditions, agreements and limitations of and shall follow the primary insurance in all respects.
"Under the above interpretative guidelines it can be said that the exclusionary phrase `interest on judgments' means only the interest accruing on a sum after judgment therefor has been entered. If this is correct, the interest accruing from date of judicial demand until judgment is not excluded from the coverage and is the liability of Reserve. Obviously, this interpretation fits perfectly with the provision of the Travelers' policy on interest thereby affording the insured with total coverage for interest accruing from judicial demand upon the excess award. Considering the phrase without regard to the aforesaid interpretative guidelines may reasonably result in the opposite meaning, i. e., that all interest specified in the judgment is excluded from coverage. The least that can be said of the language is that it is ambiguous and, as a matter of law, requires a construction against Reserve and in favor of its insured.
"Though not raised by Travelers, this court is not unmindful of the plausible contention that could be raised to the effect that Reserve's attempt to limit its interest liability is in contravention of law within the meaning of LSA-R.S. 13:4203 as defined by the LeBlanc and Soprano cases. These cases strike down a policy provision providing for interest at a lesser rate or for a shorter term than fixed by law and it can be argued that the effect of Reserve's exclusion, as interpreted by Reserve, is likewise in contravention of law and against public policy. However, it is unnecessary to premise the decision in this case upon the basis of R.S. 13:4203, and we do not do so. Were we to attempt to do so, a subsidiary consideration would be raised by a fact alluded to by counsel but not made a part of the evidence in this case.
"Counsel for Reserve asserts in his memorandum that the action giving rise to this dispute was brought under the Outer Continental Shelf Lands Act, 43, U.S.C. 1331-1343. Assuming this to be an established fact, it follows that 28 U.S.C. 1961 is obligatory and controlling. It provides that interest shall be calculated from the date of the entry of judgment, at the rate allowed by State law. R.S. 13:4203 is, therefor, rendered inapplicable. See Berry v. Sladco, Inc., C.A.1974, 495 F.2d 523, and Oil Chemical and Atomic Workers International Workers Union v. American Cyanamid Corp., 546 F.2d 1144 (5th Cir. 1977). Under this view, Reserve's exclusionary clause as to interest accruing between judicial demand and judgment should not be said to be in contravention of law. It may yet be argued, however, that interest from judicial demand was decreed by the United States District Court; the judgment was not appealed; it became the law of the case; and, under such circumstances, our public policy nullifies an insurance provision excluding liability for such interest. This latter view is not persuasive. While interesting, these academic considerations are discussed only for the sake of complete review of the problem presented to us." (Emphasis added by the trial judge.)
Lastly, Travelers has answered the appeal seeking an amendment to the judgment making the declaratory judgment executory so as to award interest from date of judicial demand, rather than from the date of the judgment.
Reserve argues that a party is entitled to interest from date of judicial demand only in actions ex delicto, citing LSA-R.S. 13:4203 and Davis v. LeBlanc, 149 So.2d 252 (La.App. 3rd Cir. 1963).
A careful reading of the Davis case will reveal that the judgment which did not grant interest from judicial demand had become final and unappealable. After concluding such, the court then discussed whether the suit was one in tort or in contract. If in tort, no mention of interest need be made for LSA-R.S. 13:4203 mandates in actions "ex delicto" interest from *1048 date of judicial demand, whether in the judgment or not. The court ultimately concluded that this was a suit in contract, thus denying interest. We find neither Davis v. LeBlanc, supra, nor LSA-R.S. 13:4203 controlling.
LSA-C.C.P. art. 1921 provides:
"The court shall award interest in the judgment as prayed for or as provided by law."
In the motion seeking supplemental relief to the declaratory judgment, plaintiff prayed for interest from date of judicial demand, January 25, 1978. The language of LSA-C.C.P. art. 1921 is mandatory. We know of no reason why the interest was not awarded from date of judicial demand, thus the judgment of the trial court is amended to provide interest from date of judicial demand, January 25, 1978.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed and amended so as to award interest from the date of judicial demand, at appellant's costs.
AFFIRMED AND AMENDED.